UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| ROBERT WILHELM, <br><br> Plaintiff, <br><br> v. <br><br> TC PIPELINES, LP, STANLEY G. CHAPMAN, III, NATHANIEL A. BROWN, NADINE E. BERGE, JACK F. STARK, MALYN K. MALQUIST, PEGGY A. HEEG, and GLORIA L. HARTL, <br><br> Defendants. | Case No._____ <br><br> **COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** <br><br> JURY TRIAL DEMANDED |

---

Plaintiff Robert Wilhelm ("Plaintiff"), by and through his undersigned counsel, for his complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## NATURE AND SUMMARY OF THE ACTION

1. This is an action brought by Plaintiff against TC PipeLines, LP ("TC PipeLines" or the "Partnership") and the members of the Board of Directors (the "Board" or the "Individual Defendants") of TC PipeLines GP, Inc. (the "General Partner"), the general partner of the Partnership, for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9, and to enjoin the vote on a proposed transaction, pursuant to which TC PipeLines will be acquired by TC Energy Corporation ("TC Energy"), through TC Energy's wholly owned subsidiary, TCP Merger Sub, LLC ("Merger Sub") (the "Proposed Transaction").

2.      On December 15, 2020, TC PipeLines issued a press release announcing that it had entered into an Agreement and Plan of Merger dated December 14, 2020 (the "Merger Agreement") to sell TC PipeLines to TC Energy. Under the terms of the Merger Agreement, each TC PipeLines unitholder will receive 0.70 shares of TC Energy common stock for each TC PipeLines unit that they own (the "Merger Consideration").

3.      On January 26, 2021, TC PipeLines filed a Schedule 14A Definitive Proxy Statement (the "Proxy Statement") with the SEC. The Proxy Statement, which recommends that TC PipeLines unitholders vote in favor of the Proposed Transaction, omits or misrepresents material information concerning, among other things, the Partnership's financial projections and the financial analyses supporting the fairness opinion provided by the conflicts committee of the Board's ("Conflicts Committee") financial advisor, Evercore Group L.L.C. ("Evercore"). Defendants authorized the issuance of the false and misleading Proxy Statement in violation of Sections 14(a) and 20(a) of the Exchange Act.

4.      In short, unless remedied, TC PipeLines' public unitholders will be irreparably harmed because the Proxy Statement's material misrepresentations and omissions prevent them from making a sufficiently informed voting decision on the Proposed Transaction. Plaintiff seeks to enjoin the unitholder vote on the Proposed Transaction unless and until such Exchange Act violations are cured.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

6. This Court has jurisdiction over the defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because defendants are found or are inhabitants or transact business in this District.  TC PipeLines' common units trade on the New York Stock Exchange, which is headquartered in this District, rendering venue in this District appropriate.

## THE PARTIES

8. Plaintiff is, and has been at all times relevant hereto, a continuous unitholder of TC PipeLines.

9. Defendant TC PipeLines is a Delaware limited partnership with its principal executive offices located at 700 Louisiana Street, Suite 1300, Houston, Texas 77002-2761.  TC PipeLines acquires, owns and participates in the management of energy infrastructure assets in the U.S.  TC PipeLines' common units trade on the New York Stock Exchange under the ticker symbol "TCP."

10. Defendant Stanley G. Chapman, III ("Chapman") has been a director and Chair of the General Partner since January 2019.

11. Defendant Nathaniel A. Brown ("Brown") has been President, Principal Executive Officer and a director of the General Partner since May 2018.

12. Defendant Nadine E. Berge ("Berge") has been a director of the General Partner since May 2018.

13. Defendant Jack F. Stark ("Stark") has been a director of the General Partner since July 1999.

14. Defendant Malyn K. Malquist ("Malquist") has been a director of the General Partner since April 2011.

15. Defendant Peggy A. Heeg ("Heeg") has been a director of the General Partner since September 2020.

16. Defendant Gloria L. Hartl ("Hartl") has been a director of the General Partner since November 2020.

17. Defendants identified in paragraphs 10-16 are referred to herein as the "Board" or the "Individual Defendants."

## OTHER RELEVANT ENTITIES

18. TC Energy is incorporated in Canada with its principal executive offices located at 450 – 1st Street S.W., Calgary, Alberta, Canada T2P 5H1. TC Energy is in the responsible development and reliable operation of North American energy infrastructure, including natural gas and liquids pipelines, power generation and gas storage facilities.

19. General Partner is an indirect wholly-owned subsidiary of TC Energy and the general partner of the Partnership.

20. Merger Sub is a Delaware limited liability company and indirect wholly owned subsidiary of TC Energy.

## SUBSTANTIVE ALLEGATIONS

**Background of the Partnership**

21. TC PipeLines was formed by TransCanada PipeLines Limited, a wholly owned subsidiary of TC Energy, to acquire, own and participate in the management of energy infrastructure assets in the U.S. The Partnership owns interests in eight federally regulated U.S. interstate natural gas pipelines that are collectively designed to transport approximately 10.9 billion cubic feet per day of natural gas from producing regions and import facilities to market

hubs and consuming markets primarily in the Western, Midwestern and Northeastern U.S.

22. On November 10, 2020, TC PipeLines announced its third quarter 2020 financial results, including net income attributable to controlling interests of $65 million, compared to $56 million in the third quarter of 2019, and net income per common unit of $0.90, compared to $0.76 in the third quarter of 2019.  Commenting on the Partnership's financial results, defendant Brown stated:

> During the third quarter of 2020, our diversified portfolio of essential energy infrastructure continued to perform well and generated solid results.  These results continue to highlight the resiliency of our assets during these unprecedented times.  We also continued to advance our suite of organic growth projects with PNGTS' Portland XPress project being placed into service on November 1 as planned and our other projects progressing on schedule.

**The Proposed Transaction**

23. On December 15, 2020, TC PipeLines issued a press release announcing the Proposed Transaction.  The press release states, in relevant part:

> HOUSTON, Dec. 15, 2020 -- TC PipeLines, LP (NYSE: TCP) (TCP or the Partnership) today announced it has entered into a definitive agreement and plan of merger pursuant to which TC Energy Corporation (TSX, NYSE: TRP) (TC Energy) will acquire all the outstanding common units of TCP not beneficially owned by TC Energy or its affiliates in exchange for TC Energy common shares. Pursuant to the agreement, TCP common unitholders would receive 0.70 common shares of TC Energy for each issued and outstanding publicly-held TCP common unit. This represents a 19.5 per cent premium to the TCP closing price before the original offer as of October 2, 2020.
>
> The conflicts committee, composed of independent directors of the Partnership's general partner, after consultation with its independent legal and financial advisors, unanimously approved the merger agreement and determined it to be in the best interests of the Partnership and its unaffiliated unitholders. Subsequently, the board of directors of the Partnership's general partner approved the merger agreement and determined it to be fair and reasonable and in the best interests of the Partnership.
>
> The transaction is expected to close late in the first quarter or early in the second quarter of 2021 subject to the approval by the holders of a majority of outstanding common units of TCP and customary regulatory approvals. Upon closing, TCP will be wholly-owned by TC Energy and will cease to be a publicly-held master limited partnership.

The exchange ratio reflects a value for all the publicly-held common units of TCP of approximately US$1.68 billion, or 38 million TC Energy common shares based on the closing price of TC Energy's common shares on the New York Stock Exchange on December 14, 2020.

Evercore is acting as exclusive financial advisor and Kirkland & Ellis LLP is acting as legal advisor to the conflicts committee.

**The Proxy Statement Contains Material Misstatements or Omissions**

24. Defendants filed a materially incomplete and misleading Proxy Statement with the SEC and disseminated it to TC PipeLines' unitholders. The Proxy Statement misrepresents or omits material information that is necessary for the Partnership's unitholders to make an informed decision whether to vote in favor of the Proposed Transaction.

25. Specifically, as set forth below, the Proxy Statement fails to provide Partnership unitholders with material information or provides them with materially misleading information concerning the Partnership's financial projections and the financial analyses supporting the fairness opinion provided by the Conflicts Committee's financial advisor, Evercore.

26. The Proxy Statement omits material information regarding the Partnership's financial projections.

27. The Proxy Statement sets forth:

The Conflicts Committee considered the following additional factors as being potentially negative or unfavorable in making its determination, approval and recommendation with respect to the Merger Agreement and the transactions contemplated thereby, including the Merger:

- The resulting combined company may not achieve its projected financial results or expected synergies.

Proxy Statement at 52-53. The Proxy Statement, however, fails to disclose the Partnership's projected expected synergies for the combined company, as relied upon by the Conflicts Committee.

28. In addition, the Proxy Statements states that, "[i]n connection with rendering its opinion and performing its related financial analysis, Evercore, among other things . . . performed a discounted cash flow analysis of TC PipeLines utilizing projected financial data provided by TC PipeLines[.]" *Id.* at 54. Yet, the Proxy Statement fails to disclose the cash flows utilized by Evercore in its discounted cash flow analysis, as well as the underlying line items.

29. The Proxy Statement also omits material information regarding Evercore's financial analyses.

30. The Proxy Statement describes Evercore's fairness opinion and the various valuation analyses they performed in support of its opinion. However, the description of Evercore's fairness opinion and analyses fails to include key inputs and assumptions underlying these analyses. Without this information, as described below, TC PipeLines' public unitholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on Evercore's fairness opinion in determining whether to vote in favor of the Proposed Transaction.

31. With respect to Evercore's *Discounted Cash Flow Analysis* of TC PipeLines, the Proxy Statement fails to disclose: (i) the cash flows used in the analysis; (ii) quantification of the inputs and assumptions underlying the discount rates ranging from 5.5% to 6.5%; and (iii) quantification of TC PipeLines' terminal value.

32. With respect to Evercore's *Discounted Distribution Analysis* for TC PipeLines, the Proxy Statement fails to disclose a quantification of the inputs and assumptions underlying the cost of equity ranges of 7.5% to 8.5% and 9.0% to 11.0%.

33. With respect to Evercore's *Discounted Dividends Analysis* for TC Energy, the Proxy Statement fails to disclose a quantification of the inputs and assumptions underlying the cost of equity ranges of 8.0% to 9.0% and 9.0% to 11.0%.

34. With respect to Evercore's *Peer Group Trading Analyses* for TC PipeLines and TC Energy, respectively, the Proxy Statement fails to disclose the individual multiples and metrics for the companies observed in the analysis.

35. With respect to Evercore's *Precedent M&A Transactions Analysis* for TC PipeLines, the Proxy Statement fails to disclose the individual multiples and metrics for the transactions observed in the analysis.

36. Without such undisclosed information, TC PipeLines unitholders cannot evaluate for themselves whether the financial analyses performed by Evercore were based on reliable inputs and assumptions or whether they were prepared with an eye toward ensuring that a positive fairness opinion could be rendered in connection with the Proposed Transaction. In other words, full disclosure of the omissions identified above is required in order to ensure that unitholders can fully evaluate the extent to which Evercore's opinion and analyses should factor into their decision whether to vote in favor of or against the Proposed Transaction.

37. The omission of this material information renders the statements in the "TC PipeLines Unaudited Prospective Financial Information" and "Opinions of the Financial Advisor of the Conflicts Committee" sections of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

38. The Individual Defendants were aware of their duty to disclose this information and acted negligently (if not deliberately) in failing to include this information in the Proxy Statement. Absent disclosure of the foregoing material information prior to the unitholder vote on

the Proposed Transaction, Plaintiff and the other TC PipeLines unitholders will be unable to make an informed decision whether to vote in favor of the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

**CLAIMS FOR RELIEF**

**COUNT I**

**Claims Against All Defendants for Violations of Section 14(a) of the
Exchange Act and Rule 14a-9 Promulgated Thereunder**

39.     Plaintiff repeats all previous allegations as if set forth in full.

40.     During the relevant period, defendants disseminated the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary to make the statements, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

41.     By virtue of their positions within the Partnership, the defendants were aware of this information and of their duty to disclose this information in the Proxy Statement. The Proxy Statement was prepared, reviewed, and/or disseminated by the defendants. It misrepresented and/or omitted material facts, including material information about the Partnership's financial projections and the financial analyses supporting the fairness opinion provided by the Conflicts Committee's financial advisor, Evercore. The defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

42.     The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable unitholder would consider them important in deciding how to vote on the Proposed Transaction.

43.     By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

44. Because of the false and misleading statements in the Proxy Statement, Plaintiff is threatened with irreparable harm, rendering money damages inadequate. Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## COUNT II

### Claims Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act

45. Plaintiff repeats all previous allegations as if set forth in full.

46. The Individual Defendants acted as controlling persons of TC PipeLines within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of TC PipeLines, and participation in and/or awareness of the Partnership's operations and/or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Partnership, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

47. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

48. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Partnership, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Proxy Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were, thus, directly involved in the making of the Proxy Statement.

49. In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction. The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions the Partnership directors had input into.

50. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

51. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and SEC Rule 14a-9, promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of defendants' conduct, TC PipeLines' unitholders will be irreparably harmed.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of TC PipeLines, and against defendants, as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until defendants disclose and disseminate the material information identified above to TC PipeLines unitholders;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C. Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as SEC Rule 14a-9 promulgated thereunder;

D. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: February 10, 2021

**WEISSLAW LLP**

By _____
Richard A. Acocelli
1500 Broadway, 16th Floor
New York, New York 10036
Telephone: (212) 682-3025
Facsimile: (212) 682-3010
Email: racocelli@weisslawllp.com

*Attorneys for Plaintiff*